THE CITY OF ROCHESTER, Respondent, *v.* ROBERT WEST, Appellant.

*Police power — city ordinance requiring bill posters to be licensed and forbidding bill-boards more than six feet in height.*

A city ordinance providing that no person shall carry on the business of bill posting within the city without having procured a license, and that no person shall erect any billboard more than six feet in height within the city without

the permission of the common council, is a lawful exercise of the police power under the provisions of a city charter conferring power upon the common council to license and regulate bill posting, bill distributing and sign advertising, and to prescribe the terms and conditions upon which any license shall be granted; and a local manager of a bill posting company, duly licensed, who erects, upon premises leased by it upon one of the avenues of the city, a billboard more than six feet in height without having applied for or obtained permission of the common council as required by the ordinance, is properly convicted of a violation thereof.

APPEAL by the defendant, Robert West, from a judgment of the County Court of Monroe county in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 20th day of December, 1897, affirming a judgment of conviction rendered in the Police Court of the city of Rochester.

*John R. Fanning,* for the appellant.

*Edward R. Foreman,* for the respondent.

ADAMS, J.:

The defendant, who is the local manager of the Rochester Bill Posting Company, was, upon the 4th day of June, 1897, convicted in the Police Court of the city of Rochester of a violation of an ordinance of that city relating to bill posting and billboards.

This conviction was subsequently affirmed by the County Court of Monroe county, and from the judgment of affirmance the defendant brings this appeal.

The ordinance above referred to was adopted by the common council upon the 22d day of December, 1896, and among its provisions are the following, viz.:

"1. No person shall carry on the business of bill posting, bill distributing or sign advertising within the city of Rochester without having procured a license as required by the terms of this ordinance. * * *

"8. No person shall hereafter erect any billboard more than six feet in height within the city of Rochester without permission of the common council. Every applicant for permission to erect a billboard more than six feet in height within said city is required to give one week's notice in writing, personally, or by mail, of such application to the owners, occupants, or agents of all houses and

lots within a distance of two hundred feet from where such bill-board is to be erected. No such application shall be considered by the common council without verified proof of the service of the notice herein described, or the written consent of such owners, occupants, or agents to the erection of said billboard."

It was conceded upon the trial that the bill posting company was duly licensed to carry on the business of bill posting in the city of Rochester, and that in the conduct of its business the defendant did upon the 26th day of April, 1897, and while the above-mentioned ordinance was in force, erect upon premises leased by the company upon Lake avenue in that city, a billboard more than six feet in height without permission of the common council and without having made any application therefor as required by section 8 of the ordinance in question.

It was also conceded that the structure thus erected was substantially constructed of new materials, and that on the 26th day of April, 1897, it was used by the defendant as a billboard without his having either obtained or applied for the necessary consent of the local authorities.

It is perfectly apparent, therefore, that the defendant was properly convicted of the offense charged against him, and that the judgment appealed from must stand, provided the ordinance which the defendant admits he has violated is one which may be lawfully enforced by the municipality which enacted it.

In considering the question which is here presented, it is to be noted that the business in which the defendant, as the agent of the bill posting company was engaged, is in itself perfectly lawful. Moreover, it appears that the company has leased premises and expended money in the erection of the structure thereon to facilitate the conduct of its business, and it necessarily follows that if the ordinance in question were to be enforced it would operate as a restraint upon and an interference with the company's business and property to an extent which can only find justification in the fact that such enforcement was a reasonable exercise of the police power of the municipality.

An attempt to define the term "police power" either accurately or satisfactorily is sometimes attended with no little difficulty, and it has been said by a learned jurist that, "It is much easier to per-

ceive and realize the existence and sources of this power than to mark its boundaries or prescribe limits to its exercise." (SHAW, Ch. J., in *Commonwealth* v. *Alger*, 7 Cush. 85.)

Generally speaking, however, it may be characterized as a power which inheres in the State and in each political division thereof to protect by such restraints and regulations as are reasonable and proper the lives, health, comfort and property of its citizens. It constituted an essential feature of some of the enactments of the Twelve Tables, and it has for ages been adopted and enforced by all civilized nations as a cardinal rule of the civil law.

What is a reasonable exercise of this power often depends upon the circumstances existing at the time it is called into operation; but in every case the fundamental principle upon which it rests is expressed by the maxium, *salus populi suprema lex est;* and its only limitation is that it "must have reference to the comfort, the safety or the welfare of society, and it must not be in conflict with the provisions of the Constitution." (Potter's Dwarris Stat. 458; *People* v. *Budd*, 117 N. Y. 1, 28; *Matter of Jacobs*, 98 id. 108.)

The question, therefore, with which we are immediately concerned is: Does the ordinance which the defendant has violated contemplate the exercise of the police power of this particular municipality to an extent beyond that which may be regarded as reasonable?

It is a fact so patent that judicial notice may fairly be taken of its existence, that the modern system of advertising by posters is such that one can hardly pass along the streets of any large town without being compelled to gaze upon advertisements which are enormous in size and not infrequently offensive in their character. It is true that there is nothing in the record before us to indicate that the defendant or his company ever made any improper use of this particular billboard, but the mere fact that it is liable to be so used would seem to afford sufficient reason why, in the interests of decency and morality, the police power of the city might very properly be exerted to restrain and regulate the business of bill posting in some such manner as is provided by the ordinance we are considering.

But billboards of the size and description of those which the defendant claims the right to erect are more than an annoyance to

the people who reside near them; they are likewise a constant menace to the lives and limbs of those who are obliged to pass along in front of them, for it is obvious that if the municipality has no right to place any restriction upon the size and character of such structures, one might be erected of such dimensions as would render it liable to succumb to a violent gust of wind and fall upon and kill or injure the passers-by. Many cases might be cited where the exercise of the police power as a restraining influence in behalf of the health and safety of a community has been held to be entirely proper, such for instance as the storing of gunpowder and other combustible materials in remote and isolated places; the non-erection of wooden buildings within specified fire limits, or the exclusion of slaughter houses from certain portions of a city. But the reason for its exercise in this particular case is so manifest that the citation of authorities in support of the validity of the plaintiff's ordinance seems to be unnecessary.

We have not overlooked the cases to which our attention has been directed by the brief of the learned counsel for the defendant, but after a careful examination of the same we are unable to discover that they have any application to the facts of this case, for they were either decided to meet exceptional and well-known local conditions, or else they were adjudications which were affected by circumstances which are not here present.

There is, however, one contention upon the part of the defendant which should not be permitted to pass unnoticed, and that is that the ordinance we are considering is not authorized by the plaintiff's charter. It is undoubtedly the rule that a municipal corporation cannot accomplish by ordinance that which is not permitted by its charter, and consequently if this particular ordinance is, as the defendant claims, without organic sanction, it must be regarded as *ultra vires* and void (*Lyth* v. *Hingston*, 14 App. Div. 11); but by reference to subdivision 21 of section 40 of the present city charter, it will be seen that among the general powers conferred upon the plaintiff's common council is that of licensing and regulating bill posting, bill distributing and sign advertising, and prescribing the terms and conditions upon which any such license shall be granted. (Laws of 1894, chap. 28, § 9, amending chap. 14, Laws of 1880.)

It is insisted, however, that while the charter does confer upon the legislative branch of the city government the right to license and regulate bill posting, it does not confer upon it the power to determine the size and character of the contrivances or appliances by means of which this method of advertising may be accomplished.

We think there are two complete and obvious answers to this proposition, one of which is that the charter expressly provides that the common council shall prescribe the terms and conditions upon which the license shall be granted, and that is precisely what the ordinance in question is designed to accomplish, for it first declares that no person shall carry on the business of bill posting, etc., without having obtained a license, and then it provides the "terms and conditions" upon which the right to erect certain structures and appliances for the carrying on of the business shall be granted. But even if the power thus expressly conferred were eliminated from the charter, we think the right to regulate the business includes the right to prescribe the means by which it shall be conducted.

The Century Dictionary defines the verb "regulate" to mean to "govern by or subject to certain rules or restrictions;" and it was said in a case where the right to control the business of slaughtering animals was involved, that "to regulate implies a power of restriction and restraint," which relates not only to the manner of conducting a specified business, but also to the *erection of the building in which it is conducted.* (*Cronin* v. *People*, 82 N. Y. 318.)

But without prolonging the discussion, it is only necessary to add by way of summary that the ordinance in question is, in our opinion, a perfectly valid one, and that the power which it authorizes was not improperly or unreasonably exercised in this instance. The judgment appealed from should, therefore, be affirmed.

All concurred.

Judgment of the County Court affirmed, with costs.