STATE OF NEW JERSEY (TOWNSHIP OF WILLINGBORO), PLAINTIFF-RESPONDENT, v. BOSTON JUVENILE SHOES, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 29, 1970—Decided February 2, 1971.

Before Judges LEWIS, MATTHEWS and MINTZ.

*Mr. Alton Silverman* argued the cause for appellant.

*Mr. Sanford Soren* argued the cause for respondent.

The opinion of the court was delivered by
MATTHEWS, J. A. D. Defendant was convicted of violating an ordinance of the Township of Willingboro, which requires anyone who exhibits a sign to pay an annual licensing fee of $5. Originally, defendant was convicted in the Willing-

boro Municipal Court and fined $25 plus $5 costs. The conviction was affirmed by a trial *de novo* in the Burlington County Court and the same fine was imposed.

Defendant operates a shoe store in the Willingboro Plaza. The store is located in a courtyard of the plaza which is completely hidden from the general public unless one enters the courtyard area. To reach the store, it is necessary to travel a minimum of 800 feet over a parking area which is the property of the shopping center.

During the period in question defendant had placed at least three signs on his premises:

(1) A canopy sign reading "Stride-Rite Shoes." This sign hangs in front of the store directly over a walkway, suspended from a canopy under which shoppers pass.

(2) A sign painted on the glass door of the store which reads, "Boston Juvenile Shoes, Stride-Rite Shoes." This sign is defendant's trademark.

(3) At least one, and perhaps more, temporary window signs made of paper, roughly 2 x 3 feet, bearing a single word "SALE." This sign is fastened on the window and is used only during two months of the year.

The sections of the ordinance most pertinent to this appeal read as follows:

a. "Sign" shall mean and include every sign, billboard, ground sign, wall sign, roof. sign, sign painted on the exterior surface of a building structure, illuminated sign, projecting sign, temporary sign, flag, pennant and badge, and shall likewise include any announcement, declaration, demonstration, display illustration or insignia used to advertise or promote the interest of any person, firm or corporation when the same is placed either indoors or out of doors in such a way that the same is in view of the general public.

(b) "Sign" shall not mean or include any flag, badge or insignia of any public, quasi-public, civic, charitable or religious group, nor shall it mean or include the flags of the United States of America or the State of New Jersey.

17–3 PERMIT REQUIRED.

No sign which exceeds two square feet in area shall be erected, maintained, removed, altered or repaired until a permit for the same has been issued by the township building inspector.

17-4.2. *Licensing Fee.* In addition to the aforementioned application fee, there shall be an additional annual licensing fee of five ($5.00) dollars payable on the second day of January of each calendar year for each sign permitted to exist in a business or industrial zone by the terms of this chapter.

17-10-3 *Special Sales.* The building inspector shall be and hereby is empowered to issue permits for temporary free-standing signs designed to promote special sales or other special promotion activities within the community. Each applicant shall be permitted to erect only one such sign on each permit granted and said sign shall not exceed 32 square feet in area. No more than four said permits may be issued to any one person, firm or corporation during any calendar year, unless said person, firm or corporation maintains more than one business location in the township. No sign erected pursuant to a permit issued under this section may be lawfully maintained for any period in excess of two weeks from the date on which the permit is issued. The permit fee for all signs issued pursuant to this paragraph shall be two ($2.00) dollars, rather than the permit fee prescribed for all other signs by section 17-4 of this chapter.

The township maintains that the sign ordinance here under review may be justified as a reasonable exercise of the police power because, it is said, regular inspections are necessary to insure the continued safe conditions of the signs. Specifically, it is urged that inspection of a hanging sign may reveal a situation in which the sign may be about to fall down; similarly, an inspection of the window signs will insure that they do not completely cover the glass area so as to hamper efforts to discover and control a possible fire.

Defendant, on the other hand, attacks the legality of the ordinance as an invalid exercise of the police power. It claims that the ordinance is too vague; that it is broad and over-reaching, and that it is beyond the power of the municipality.

This ordinance does not purport to be an exercise of the zoning power granted to municipalities by the Legislature. Rather, it is intended to be a regular ordinance which has as its aim control over the use of signs within the municipality. It is well settled that a municipality may only exercise those powers expressly granted to it, or which may be expressly implied therefrom. *Sinclair Refining Co. v. County of Bergen,* 103 *N. J. Super.* 426 (App. Div. 1968). In *State v. Steiner,* 7 *N. J. Misc.* 1056, 147 *A.* 746 (Sup. Ct. 1929),

the court recognized the power of municipalities requiring a permit for the erection of a sign, because a sign is a "structure" within the meaning of *N. J. S. A.* 40:48–1(13). That statute grants to municipalities the power to regulate construction, erection, alteration and repair of buildings and structures of every kind within the municipality.

Under *N. J. S. A.* 40:67–1(d), municipalities are granted the right to prevent or regulate the "construction of any * * * sign * * * erection or projection in, over or upon any street or highway * * *." A similar power is repeated in *N. J. S. A.* 40:175–10 which refers to cities.

A search of our laws uncovers no general or specific statute from which a reasonable implication may be drawn which could confer the power claimed by the township in this case.

Willingboro argues that under the provisions of *N. J. S. A.* 40:69A–29 and 30, which are part of the Faulkner Act, broad powers are granted to municipalities which have opted a form of government under that act, and accordingly the ordinance here in question is sustainable when one looks to section 29. Indeed, the revised ordinance of the Township of Willingboro refers to *N. J. S. A.* 40:69A–29 and 30 as the source of power for the ordinance here in question.

*N. J. S. A.* 40:69A–29 is not a "general law" within the statutory definition. *Hutt v. Robbins,* 98 *N. J. Super.* 99, 106 (1967). It does not, in its general terms, confer a blank police power upon municipalities choosing a form of government under the Faulkner Act.

We conclude that the regulatory features of the ordinance here under review are beyond the power of the Township of Willingboro. Because the terms of the ordinance in question are so vague and broad, we find it impractical to attempt to segregate those portions which might be valid from those which are clearly invalid.

In view of our conclusion reached herein, we deem it unnecessary to pass upon the other issues raised by appellant.

The judgment of conviction is reversed.